VERRENICE MUNGER, ADMINISTRATOR, vs. ELIZABETH DOOLAN.

Third Judicial District, Bridgeport, April Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In the absence of jurisdiction over the person of a nonresident defendant, it is essential to the validity of a *quasi* judgment *in rem* against his property, that the course prescribed by statute for its attachment should have been strictly and literally followed; otherwise such judgment and all subsequent proceedings based thereon are *coram non judice* and absolutely void.

The defendant, Elizabeth Doolan, who claimed to be a creditor of her brother James, sued him in 1893 and undertook to attach his real estate, of which she had the charge and possession. A copy of the writ and complaint was left by the officer at the " last usual place of abode" of James in this State, which chanced to be the house of Elizabeth, with whom James had resided before 1880, when he disappeared and had never thereafter been heard of. He had no agent or attorney in this State, and no appearance in the suit was made for him. Elizabeth obtained judgment, filed and foreclosed a judgment-lien, and by virtue thereof has ever since asserted her ownership of said real estate. In 1899 the plaintiff, Munger, having been appointed administrator of James' estate, claimed said land and sought to set aside said judgments as void.  *Held :* —

1. That James, having had no abiding-place in this State for more than thirteen years, was a nonresident.

2. That inasmuch as no copy of the process was left for James with Elizabeth—who had charge and possession of the real estate—as required by General Statutes, Rev. 1902, § 828, no valid attachment of the land was effected; and therefore the court, having acquired no jurisdiction either of the person or property of James, was powerless to render any judgment, general or qualified, against him.

3. That the record fairly disclosed the necessity of a resort to the realty for the payment of debts and expenses of settlement, and therefore the administrator had an interest sufficient to enable him to maintain the present action.

Argued April 16th—decided June 10th, 1903.

ACTION to set aside, as void, judicial proceedings by virtue of which the defendant had acquired the apparent title and possession of certain real estate, brought to the Superior Court in New Haven County; facts found and judgment

rendered (*Gager, J.*) for the plaintiff, and appeal by the defendant. *No error.*

In 1893 the defendant brought suit against her brother, James Doolan, returnable to the Court of Common Pleas in New Haven county, and recovered judgment. A judgment-lien was thereupon placed upon certain real estate in Ansonia standing in said brother's name, which had been in form attached in said suit. Proceedings to foreclose said lien followed, and judgment of foreclosure was obtained against said James Doolan, the only defendant. The time for redemption expired on the first Monday of October, 1894, and no redemption having been made, a certificate of title by virtue of the foreclosure was filed on the day following, and Elizabeth Doolan, the then plaintiff and now defendant, has since continued in possession of the premises, claiming to be the owner thereof by force of the said proceedings.

In 1880 said James Doolan, who had theretofore made his home with his said sister Elizabeth, in Ansonia, left for parts unknown. He has never since been heard of by his sister or any other relatives or persons who would naturally hear from him if living.

In 1899, upon the application of a brother of James, the plaintiff Munger was duly appointed by the Court of Probate for the district of Derby administrator on said James' estate. The present action was brought by him as such administrator to set aside all of said legal proceedings.

James became the owner of said real estate in 1869. After his disappearance, Elizabeth assumed charge and possession thereof, and so continued down to the time her claimed ownership under the foreclosure began.

*William S. Downs*, for the appellant (defendant).

*Verrenice Munger* and *Robert L. Munger*, for the appellee (plaintiff).

PRENTICE, J. Various questions arising out of the situation disclosed by this record have been argued before us.

Prominent in the plaintiff's brief is the claim that as James Doolan had been absent from his home and unheard of for the period of thirteen years, at the time when his sister Elizabeth instituted her original suit against him, he was dead in contemplation of law, and that therefore all the proceedings in that action, and all those which followed to enforce the judgment obtained therein, were void. The prominent place in the defendant's brief is given to an attempt to support the proposition that, whatever be regarded as James Doolan's legal status, the legal proceedings resulting in the foreclosure of the judgment-lien were effective as a sequestration, to satisfy the present defendant's claim against her brother, of the real estate in question, through a *quasi* judgment *in rem* under the provisions of the statute.

It is quite unnecessary to discuss the above claim of the plaintiff, involving, as it incidentally does, a number of important considerations, since within the purview of the defendant's chief contention is found a situation, created at the very inception of the legal proceedings, which stamps the whole of them as altogether void. Instead of resulting in a lawful appropriation of James Doolan's estate, regardless of whether he was living or dead, as claimed, it is clear that they were of no effect, and that James' known existence could not have imparted any life to them. They are all dependent for their vitality upon the jurisdiction of the Court of Common Pleas of the original action, and its rendition, in that action, of a valid judgment, either general or qualified.

When that action was brought James' whereabouts, if he was alive, was unknown. He had no known place of abode in this State, and had not had one for thirteen years. He was, therefore, not a resident. *Earle* v. *McVeigh*, 91 U. S. 503. He was sued and served as a nonresident, being described as of parts unknown. Of necessity, therefore, neither personal service, nor service at his usual place of abode, was or could have been made upon him. *Earle* v. *McVeigh, supra.* Appearance for him was not made. As a consequence, the court never acquired jurisdiction over James personally, and was powerless to render a general personal judgment against him.

Numerous authorities in this State and elsewhere have placed this conclusion beyond the domain of doubt, and the defendant frankly concedes it. *Starr* v. *Scott*, 8 Conn. 480, 484; *Easterly* v. *Goodwin*, 35 id. 273; *O'Sullivan* v. *Overton*, 56 id. 102; *Williams Co.* v. *Mairs*, 72 id. 430; *Cooper* v. *Reynolds*, 10 Wall. 308, 317; *Pennoyer* v. *Neff*, 95 U. S. 714.

It follows that the court acquired no jurisdiction, unless by virtue of an attachment of property. See cases last cited. An attempt to make such an attachment appears upon the record. This attempt related to certain real estate in Ansonia standing in the name of James Doolan, and owned by him at the time of his disappearance. The return shows that the officer serving the process lodged in the office of the town clerk a certificate of attachment in due form, and thereafter on the same day left a true and attested copy of the writ, with his indorsement thereon, " at the last usual place of abode of the defendant in Ansonia." The finding discloses that the place where this copy was left was the house of the plaintiff in the action, to wit, Elizabeth Doolan, which house had been James' place of residence prior to his disappearance.

It only remains to inquire whether this action by the officer created a valid attachment of the real estate described in the certificate of attachment. It is apparent that the officer proceeded as he would in attaching the real estate of a resident defendant. Our statutes (Rev. 1902, § 828) provide, and then provided (Rev. 1888, § 910), a special procedure for the attachment of estate within this State belonging to defendants not residing within the State. This statute is and was exclusive. Being in derogation of both common right and common law, it is one to be strictly interpreted and pursued. Its provisions and requirements may not be disregarded with impunity, nor waived or changed by courts. *Cody* v. *Gay*, 31 Conn. 395; *Sanford* v. *Pond*, 37 id. 588; *Hubbell* v. *Kingman*, 52 id. 17; *Ahern* v. *Purnell*, 62 id. 21. This principle has special pertinence and assumes added importance in cases where, as here, a man's

property is sought to be appropriated by another in his absence in parts unknown.

The method which is prescribed, involves a leaving by the officer of a copy of the process and declaration or complaint, together with a return describing the estate attached, with the agent or attorney of the defendant in this State, or, if there is no such agent or attorney, with him who has charge or possession of the estate attached. Rev. 1902, § 828. James Doolan had no agent or attorney in this State., Elizabeth, however, was in possession of the property. The leaving with her of the prescribed copy was therefore an essential prerequisite to a good attachment. No copy was so left. The fact that she was the plaintiff did not excuse the omission to fulfil what was made by law a condition precedent to the acquisition of a lien. It may be doubtful whether, in any event, the requirement of the statute which calls for a copy to be left " with " the agent, attorney, or person in charge or possession, would have been satisfied by a leaving at the abode of such person for him; but even this was not done in the present case. A copy was, indeed, left at Elizabeth Doolan's house, but it was left there for James and not for Elizabeth. This the return makes clear. She is not named in it. It is only by a resort to extrinsic evidence that we learn of the accident of circumstance which makes the alleged last usual place of abode of James, her abode. It does not do to say that a copy left in service at a given house for a given person, is a copy left in service upon anybody who chances to reside there, much less a copy left " with " each occupant of the house and in whatever capacity may in the end prove most serviceable. In this case we have not even the intent of the officer to reach Elizabeth, to help out the matter. He has made his intent clear in his return. He was seeking to reach the defendant through his last usual place of abode. The suggestion that the copy presumably came into the hands, or at least to the knowledge, of Elizabeth, does not improve the situation. The statute requires that a specified course be pursued, if a man's property is to be taken from him without jurisdiction of his person. It

recognizes no equivalents and admits of no evasions. Nothing less than, or different from, that which the statute prescribes can satisfy its requirements, even though the same substantial ends are accomplished. *Cody* v. *Gay*, 31 Conn. 395.

There was no lawful attachment. Such being the case, all the proceedings had in the action, including the judgment, were *coram non judice* and absolutely void. *Strong* v. *Strong*, 8 Conn. 408; *Martin* v. *Hunter*, 1 Wheat. 304, 382; *Earle* v. *McVeigh*, 91 U. S. 503. The judgment being void, all the steps subsequently taken to effectuate it necessarily fall also. The questions relating to the presumption of James' death thus become unimportant. His death established could only serve to furnish an additional reason for the result otherwise accomplished.

The conclusions we have reached as to the void character of all the steps Elizabeth took in the premises, resolves the incidental question raised by her as to the necessity of a payment to her of what is now equitably due her before the judgments can be set aside, and also her defense of laches. Notwithstanding what she has done, she stands just as she would if she had done nothing. In legal effect she has done nothing. She has put herself into no new position of the benefits of which she is to be deprived, and in which she is enabled to claim equitable protection and advantage. No judgment has been set aside. There has been none, and the present judgment simply makes formal, judicial declaration of that fact. Were the judgments merely voidable ones, different questions might be presented.

Only one other question remains. The defendant disputes the plaintiff's right to maintain this action. It is by no means clear that this question was fairly presented to the trial court. No notice is taken of it in the memorandum of decision; the finding was clearly made with no regard to it; and the plaintiff does not discuss it in his brief. If, however, it is presented for our decision, the finding is not so barren of pertinent facts that the right of the plaintiff to sue in his representative capacity is not disclosed. By the provisions

of § 362 of the General Statutes (Rev. 1902), first enacted
in 1855, the plaintiff is entitled to the possession of his in-
testate's realty during the settlement of the estate, and its
income and products, which vest in him as personal estate.
Disregarding any right which the first portion of the statute
might be claimed to confer upon an administrator, two facts
are fairly deducible from the finding, to wit: (1) that the
real estate in question comprised not only all the real estate
of James Doolan in this State, but the sole source of assets
thereof; and (2) that a claim for some sum at least against
the estate existed in favor of Elizabeth.   No means, there-
fore, exist for the payment of either the expenses of settle-
ment, or claims, unless the administrator can avail himself of
the income, and possibly the avails of the *corpus*, of the real
estate in controversy.   He therefore has an interest sufficient
to enable him to maintain his action.  *Livingston* v. *Bird*,
2 Root, 438, 440; *Andruss* v. *Doolittle*, 11 Conn. 283; *Shel-
don* v. *Bradley*, 37 id . 324.

There is no error.

In this opinion the other judges concurred.